**United Stated Bankruptcy Court, Northern District of Illinois**

| Name of Assigned Judge | Carol A. Doyle | **Case No.** | 08 B 22708 |
|---|---|---|---|
| **DATE** | March 23, 2010 | **ADVERSARY NO.** | 08 A 01008 |
| **CASE TITLE** | Southern California Gas Company v. Martin Collier | | |
| **TITLE OF ORDER** | Findings of Fact and Conclusions of Law on Plaintiff's Motion for Summary Judgment | | |

**DOCKET ENTRY TEXT**

Findings of Fact and Conclusions of Law regarding Southern California Gas Company's Motion for Summary Judgment.
**[For further details see text below.]**

**STATEMENT**

This matter is before the court on plaintiff Southern California Gas Company's ("SoCalGas") motion for summary judgment on its complaint seeking a determination that the debt owed to SoCalGas by the debtor is nondischargeable under 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6). The following are the court's findings of fact and conclusions of law.

I. **Background**

Martin Collier filed a Chapter 7 bankruptcy petition on August 29, 2008. Prior to that, SoCalGas filed an action against Collier in Los Angeles County Superior Court for breach of fiduciary duty and conversion, among other things. SoCalGas was formerly a limited partner in Hawaiian Garden Apartments ("HGA"), a partnership formed to construct and operate a low income housing project. Gersten Construction Company ("Gerston Co.") was the general partner of HGA. GC Management was eventually formed to manage HGA. GC Management was owned by two entities, one of which was owned by Collier. He was the managing member

## STATEMENT

of GC Management and the Executive Vice President of Gerston Co. The suit filed by SoCalGas alleged that Collier breached his fiduciary duty to SoCalGas and committed conversion when he took almost $1.4 million from the HGA partnership and diverted it to GC Management for his personal benefit. On December 17, 2008, SoCalGas moved to lift the automatic stay to allow SoCalGas to pursue the California action against Collier. The motion was granted.

The California court issued a tentative decision on August 24, 2009 finding Collier liable for breach of fiduciary duty and conversion. The court then issued an order adopting the tentative ruling as a final ruling and entered a judgment against Collier on December 15, 2009.

SoCalGas filed this adversary proceeding alleging that the debt owed to it by Collier is nondischargeable based on fraud under § 523(a)(2)(A), defalcation while acting as a fiduciary under § 523(a)(4), and willful and malicious injury under § 523(a)(6). SoCalGas moves for summary judgment based primarily on the doctrine of collateral estoppel. It seeks to apply the findings of fact and conclusions of law made by the California court to the elements of its claims under § 523(a).

## II.     Standard for Summary Judgment

On a motion for summary judgment, the moving party "has the burden of showing the absence of a genuine issue of material fact." *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1118 (7th Cir. 1992). The court should not weigh evidence, make credibility determinations, or attempt to determine the truth of the matter. Instead, the court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see Lohorn v. Michal*, 913 F.2d 327, 331 (7th Cir. 1990). The court may consider "any material that would be admissible or usable at trial." *Woods v. City of Chi.*, 224 F.3d 979, 987–88 (7th Cir. 2000). The court views the facts in a light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000).

When a party seeks summary judgment based on the doctrine of collateral estoppel, the nonmoving party may not defeat the motion simply by establishing that it has evidence that conflicts with the factual conclusions of the trier of fact in the previous case. Even if the nonmoving party produces evidence that contradicts a prior judgment, collateral estoppel bars the party from relitigating facts decided in the previous case. *Prochotsky v. Baker & McKenzie*, 966 F.2d 333, 334 (7th Cir. 1992); *Boim v. Quranic Literary Inst.*, 340 F. Supp. 2d 885, 900 (N.D. Ill. 2004). The moving party bears the burden of showing that collateral estoppel applies in the first instance. The nonmoving party may oppose the motion by arguing that the moving party has not met all the elements of collateral estoppel. If collateral estoppel applies, it forecloses litigation of

| STATEMENT |
| --- |

issues that the prior court actually and necessarily decided. *Havoco v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 307–08 (1995).

### III.  Collateral Estoppel

Collateral estoppel, or issue preclusion, "refers to the effect of a judgment in foreclosing litigation in a subsequent action of an issue of law or fact that has been actually litigated and decided." *Meyer v. Rigdon*, 36 F.3d 1375, 1378 n.1 (7th Cir. 1994). Although bankruptcy courts often have exclusive jurisdiction to determine the dischargeability of debts, parties may not relitigate factual or legal issues resolved in an earlier litigation that were necessary to the judgment entered. Collateral estoppel forecloses relitigation of legal and factual issues even if they arise in a new legal claim in the second case. "The whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further factfinding function to be performed." *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 336 n.23 (1979). Therefore, when a previous judgment against a debtor resolved a specific factual or legal issue that is later raised in a dischargeability action under § 523, collateral estoppel may apply to bar relitigation of that issue. *Grogan,* 498 U.S. at 289–91; *Montana v. United States*, 440 U.S. 147, 153 (1979).

Federal courts give collateral estoppel effect to state judgments based on the collateral estoppel rules that apply in the state court that entered the judgment. 28 U.S.C. § 1738; *A.D. Broker v. Mercer*, 305 F.3d 660, 669 (7th Cir. 2002). In California, collateral estoppel applies if "1) the issue necessarily decided in the previous suit is identical to the issue sought to be relitigated; 2) there was a final judgment on the merits of the previous suit; and 3) the party against whom the plea is asserted was a party, or in privity with a party, to the previous suit." *People v. Sims*, 32 Cal. 3d 468, 484 (1982). Courts applying collateral estoppel must carefully review the prior judgment to determine whether the factual or legal issue in the later proceeding was in dispute and finally resolved in the earlier proceeding.

### IV.  California Court's Findings

In an order entered on September 23, 2009, the Superior Court entered a judgment against Collier and in favor of SoCalGas with supporting findings of fact and conclusions of law, including the following:

1. Collier was the Vice President of Gersten Co. (the managing partner of HGA), as well as the managing member and 50% owner of GC Management.

2. In 1997, Collier signed a new management contract on behalf of Gersten Co. SoCalGas was not informed of the new management contract until after the dispute underlying the action arose.

-3-

**STATEMENT**

3. On July 1, 2004, Collier proposed to pay GC Management a $2 million termination fee to terminate the management contract, although it was not contractually required.

4. SoCalGas initially refused but SoCalGas and Gersten Co. reached a compromise under which GC Management would receive $618,000 of the final sales price as a 3% real estate commission.

5. On July 9, 2004, Collier faxed a "recast closing estimate" to SoCalGas's lawyer, listing $618,000 for the management contract, as opposed to the $2 million in the June 29, 2004 estimate of closing.

6. SoCalGas later discovered that Collier, on behalf of Gersten Co., paid GC Management an additional $1,382,000, amounting to the entire $2 million fee originally sought.

7. Collier took an extra $1.382 million, 90% of which belonged to SoCalGas, and diverted that money to his company, GC Management, which served to benefit him personally. He "disregarded that contract for his own gain." Tent. Ruling at p. 2.

8. Collier did not act as a reasonably prudent person.

Based on the above findings of fact, the California court concluded the following:

1. Because Collier failed to produce any evidence in support of his contentions, SoCalGas's evidence was undisputed, and there were no triable issues of material fact as to the causes of action for breach of fiduciary duty and conversion.

2. Collier breached his fiduciary duty.

3. Collier was liable for conversion.

4. Collier was personally liable for both claims.

## STATEMENT

Based on these finding of fact and conclusions of law, the Superior Court entered a judgment against Collier and in favor of SoCalGas on December 17, 2009, for $1,243,800 in damages, $374,026.01 in pre-judgment interest, and $11,937.00 in litigation costs.[1]

**V.      Section 523 (a)(4) - Defalcation While Acting in a Fiduciary Capacity**

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  To prevail under § 523(a)(4), the plaintiff must show (1) the existence of an express trust or fiduciary relations of "inequality that justify the imposition on the fiduciary of a special duty . . . to treat his principal's affairs with all the solicitude that he would accord his own affairs," (2) that the debt was caused by the debtor's fraud or defalcation; and (3) that the debtor acted as a fiduciary to the plaintiff at the time the debt was created.  *In re Dempster*, 182 B.R. 790, 801 (Bankr. N.D. Ill. 1995).

The existence of a fiduciary relationship for purposes of § 523(a)(4) is a matter of federal law.  *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000).  The traditional definition of a fiduciary relationship – one involving confidence, trust and good faith – is considered broader than that contemplated by § 523(a)(4).  *In re Dempster*, 182 B.R. 790, 801 (Bankr. N.D. Ill. 1995); *Ill. Dept. of Lottery v. Marchiando (In re Marchiando)*, 142 B.R. 246, 249 (N.D. Ill. 1992).  A § 523(a)(4) action usually reaches those fiduciary relationships in which there is substantial inequality in power or knowledge between the parties, such as a lawyer-client relationship or a director-shareholder relationship.  *In re Frain*, 230 F.3d at 1017; *In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996); *Marchiando*, 13 F.3d 1111, 1116 (7th Cir. 1994).  Two circuit courts have concluded that a managing partner owes to the limited partners the highest fiduciary duty recognized in the law.  *Bennett v. Bennett (In re Bennett)*, 989 F.2d 779, 790 (5th Cir. 1993); *See also In re Short*, 818 F.2d 693, 696 (9th Cir. 1987) ("The relationship among partners is fiduciary in character and imposes upon the partners the obligation of candor and utmost good faith in their dealings with each other.").

While defalcation is not defined in the Bankruptcy Code, the Seventh Circuit has held that a mere negligent breach of fiduciary duty is not defalcation under 11 U.S.C. § 523(a).  *Meyer v. Ringdon*, 36 F.3d 1375, 1385 (7th Cir. 1994).  Courts have found defalcation in a variety of circumstances, including "failure to meet an obligation; misappropriation of money held in a fiduciary capacity; failure to properly account for such funds."  *In re Sax*, 106 B.R. 534, 539 (N.D. Ill. 1989); *In re Anderson*, 64 B.R. at 334.

---

[1] Defendant Collier was found jointly and severally liable for these amounts, along with Albert Gersten, Gersten Construction Company, and GC Managment Company, LLC.

## STATEMENT

SoCalGas has established that collateral estoppel applies and that all the elements of an action under § 523(a)(4) for defalcation while acting as a fiduciary are satisfied. First, Collier owed a fiduciary duty for purposes of § 523(a)(4) as Executive Vice President of Gersten Co., the managing partner of the HGA limited partnership with SoCalGas. As noted above, the general partner of a limited partnership owes the limited partners a fiduciary duty for purposes of § 523(a)(4). The state court also found Collier personally liable for his actions on behalf of the Gerston Co and GC Management. These findings are sufficient to establish that he owed a fiduciary duty to SoCalGas for purposes of § 523(a)(4).

Second, the findings of the state court establish that the debt arose from a defalcation as required under § 523(a)(4). The court specifically found that Collier breached his fiduciary duty by diverting money owed from the partnership to his company, GC Management, for his own personal gain. GC Management first insisted that it was entitled to a $2 million termination fee as part of a transaction to sell the property owned by HGA. GC Management then agreed to limit its payment at the closing to $618,000 and sent SoCalGas a closing statement signed by Collier showing that amount would be paid to GC Management. Instead, without telling SoCalGas, Collier had Gersten Co. pay GC Management the $2 million originally sought instead of the $618,000 compromise amount. Although the state court made no specific finding regarding the level of Collier's intent, it is clear that Collier's decision to divert $1.382 million to GC Management was an intentional act to deprive SoCalGas of its property that was hidden from SoCalGas for Collier's own gain. The state court specifically found that although Collier "signed a contract stating that GM (sic) Management would only receive $618,000, he disregarded that contract for his own gain." Tent. Ruling at p. 2. Collier presented no evidence to the contrary in his response to the motion for summary judgment. The state court's factual findings are sufficient to establish that Collier committed defalcation while acting as a fiduciary for purposes of § 523(a)(4). The third element for an action under § 523(a)(4) is also met because the debtor was clearly a fiduciary before the debt was incurred.

The requirements of the doctrine of collateral estoppel are also met because Collier was a party to the action, there was a final decision on the merits, and each of the factual findings relied on by this court was necessary to the California court's conclusions. SoCalGas is therefore entitled to summary judgment on its claim under § 523(a)(4).

VI.    **Collier's Arguments**

Collier makes two objections to this motion for summary judgment, neither of which have merit. First, he asserts that his wife Valerie should not be named on the motion for summary judgment because she was not a party to the action. This is correct but SoCalGas does not seek a judgment against Mrs. Collier. She was not a defendant in the California case or in this adversary proceeding.

| STATEMENT |
|---|

Second, Collier argues that the California court dismissed the fraud portion of its complaint prior to the entry of the final judgment. Collier argues that the judgment should therefore be dischargeable. Whether or not the fraud claim was dismissed is irrelevant, however, because the debt is nondischargeable on an independent ground - defalcation while acting as a fiduciary under § 523(a)(4). Collier raised no other legal or factual issues in his response.

**VII. Conclusion**

For these reasons, SoCalGas's motion for summary judgment will be granted as to its claim under § 523(a)(4).

Dated: March 23, 2010

ENTERED:

_____
Carol A. Doyle
United States Bankruptcy Judge